UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORP, AND JOHN HURRY, | ) ) ) |
| Plaintiffs, | ) ) ) CASE NO. 1:16-CV-00545 |
| v. | ) ) |
| THE DEAL, LLC AND WILLIAM MEAGHER, | ) ) ) |
| Defendants. | ) |

**DECLARATION OF WILLIAM MEAGHER
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I, William Meagher, being of lawful age and otherwise competent to testify in a court of law, do hereby declare under penalty of perjury that the following is true and correct pursuant to 28 U.S.C. §1746:

1. I am a reporter for *The Deal Pipeline* and I have been named as a co-defendant in this action together with The Deal, LLC ("The Deal"), publisher of *The Deal Pipeline* (collectively with me, the "Defendants"). I make this declaration based on my personal knowledge and submit declaration, together with the exhibits annexed hereto, in support of Defendants' motion to dismiss this action for lack of personal jurisdiction.

2. I live in San Rafael, California, and work out of The Deal's offices located in Petaluma. I have never been to New Hampshire and do not know anybody who lives in that state.

3. I have worked as a journalist for 30 years and have spent more than five years covering small and microcap stock brokers for *The Deal Pipeline*. "Small" and "microcap" refers to the relatively small market capitalization of the firms whose stock is traded. Small and

microcap stocks have traditionally presented much greater risk for investor fraud than other stocks since there tends to be less publicly available information and professional analysis than there would be for bigger companies. Scottsdale is an Arizona-based stock brokerage firm that specializes in facilitating the purchase of small and microcap stocks.

4.  It is not uncommon for bad actors in the small and microcap industries to perpetrate market fraud. "Pump and dump" schemes pose a particularly serious risk. In a pump and dump scheme, the owners of cheaply purchased stock artificially inflate the stock's price by making false or misleading statements to investors and then sell the stock off at a profit at the expense of any investors still holding the worthless stock. Inexperienced and relatively poor investors are often targeted and taken advantage of by the firms running these schemes. I am deeply committed to reporting on this industry because I believe strongly that information will add transparency to opaque markets and benefit vulnerable investors.

5.  On December 6, 2013, *The Deal Pipeline* published an article I wrote entitled "FBI, securities officials investigating Scottsdale Capital, Alpine Securities, source says" (the "December 6 Article").[1] A true and correct copy of the December 6 Article is annexed hereto as Exhibit A. The December 6 Article specifically identified Scottsdale as an "Arizona-based" company and makes no reference to New Hampshire.

6.  As reported in the December 6 Article, Scottsdale clients based in Argentina were alleged to have orchestrated a $32 million pump and dump fraud by selling artificially overvalued stock in Biozoom, a medical instruments company, through their Scottsdale brokerage accounts.

---

[1] Alpine Securities is a Utah-based clearing firm controlled by Scottsdale that handles the sale of stock by Scottsdale clients.

7. In the course of researching the Biozoom scheme, I received credible information from a confidential source that Scottsdale was being investigated by the FBI and financial regulators in connection with the alleged fraud. Based on this information, I reported that Scottsdale was under investigation and further reported pertinent details about how Scottsdale had treated its clients that were involved in the scheme. I believed that information to be true when I first published it and believe it to be true now. In addition to my confidential source, I reported information in the December 6 Article from multiple other on-the-record sources.

8. The December 6 Article was entirely researched, written and edited in California. All interviews with sources were conducted over the telephone while I was located in California. None of my sources for the December 6 Article were residents of New Hampshire or physically located in New Hampshire when I spoke with them on the telephone.

9. As stated in the December 6 Article, I contacted multiple Scottsdale employees located in Arizona by telephone and asked for comment. Although one of the employees I contacted spoke to me for a short amount of time and denied being personally involved, Scottsdale officially declined to comment. I also spoke with a partner at Sidley Austin, Scottsdale's securities lawyer, who was located in New York, who also declined to comment. After the publication of the December 6 Article, in the intervening months, I received no information that called any of my reporting into question; nor did I hear any concern from Scottsdale about any inaccuracy in the December 6 Article.

10. On March 20, 2014 and April 16, 2014, *The Deal Pipeline* published two more articles written by me, which re-reported information from the December 6 Article and also reported new developments in the Biozoom investigation (respectively, the "March 20 Article" and "April 16 Article;" collectively with the December 6 Article, the "Articles"). The April 16

Article also reported on a separate money laundering investigation into Plaintiffs' Cayman Island subsidiary. True and correct copies of the March 20 Article and April 16 Article are annexed hereto as Exhibits B and C.

11. Like the December 6 Article, both the March 20 Article and the April 16 Article were entirely researched, written and edited in California and none of the sources I contacted by telephone were residents of New Hampshire. As stated in the March 20 Article, I sought a response from Scottsdale employees in Arizona but Scottsdale representatives declined to comment. For the April 16 Article, I contacted Scottsdale's lawyer in New York, but he also declined to comment. As with the December 6 Article, Plaintiffs did not question or challenge the substance of any of the claims made about Scottsdale either before the March 20 and April 16 Articles were published or in the months afterwards. Both the March 20 Article or the April 16 Articles refer to Scottsdale as being based in Arizona and make no references to New Hampshire.

12. In January, 2015, a federal court sitting in the Southern District of New York found at least six of Scottsdale's Biozoom clients liable for violating securities law for their part in the Biozoom pump and dump scheme. *See SEC v. Tavella*, 77 F. Supp. 3d 353, 358-59 (S.D.N.Y. 2015). The court ordered the guilty shareholders to disgorge millions of dollars of ill-gotten gains on top of substantial civil penalties. *Id*. at 359-64.

13. On May 28, 2015, I wrote another article about Plaintiffs in which I reported that FINRA "filed a complaint alleging Scottsdale Capital Advisors and its director John Hurry set up an offshore entity in the Cayman Islands, recruited clients and allowed them to trade penny stocks in violation of Finra regulations (the "May 28 Article"). Although the May 28 Article was the subject of a lawsuit Plaintiffs filed against me and The Deal in New York, it is not

mentioned in Plaintiffs' complaint here.  A true and correct copy of the May 28 Article is annexed hereto as Exhibit D.

14.     As the May 28 Article reports, Plaintiffs Scottsdale and Hurry brought a lawsuit in the Arizona federal district court against FINRA in November 2014, alleging that FINRA had engaged in "deliberate, retaliatory, and malicious conduct" in connection with regulatory investigations and enforcement activities focused on Plaintiffs Scottsdale, Hurry and their related companies."  A true and correct copy of the complaint filed in *Hurry v. Finra*, CV-14-2490-PHX-JWS (D. Az.) (the "Arizona Action") is annexed hereto as Exhibit E.

15.     Plaintiffs made no attempts to contact me for nearly two years after the December 6 Article was published.  In September 2015, I was contacted for the first time by an attorney representing Plaintiffs, who challenged the accuracy of the Articles' reporting on the FBI investigation.  Prior to bringing this lawsuit, Plaintiffs never contacted me to dispute my reporting on "perks" provided by Scottsdale to Biozoom shareholders, including discounted commissions or the ability for those shareholders to wire money to their own accounts located abroad.

16.     On August 29, 2016 Plaintiffs' previous counsel in the Arizona Action filed a motion to withdraw because they found themselves "ethically required to terminate their representation" of Plaintiffs.  Annexed hereto as Exhibit F is a true and correct copy of the motion for leave to withdraw filed by Plaintiffs previous counsel in The Arizona Action, Dkt. No. 116.  The law firm of Harder Mirell & Abrams – which represents Plaintiffs in this New Hampshire action – subsequently appeared as counsel for Plaintiffs in the Arizona Action.

17.     I certify under penalty of perjury that the foregoing is true and correct.

Dated:      February 1, 2017

        /s/ William Meagher
William Meagher