# EXHIBIT C

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| MELANIA TRUMP | : | |
| Plaintiff | : | |
| v. | : | Case No. 424492-V |
| WEBSTER GRIFFIN TARPLEY, et al. | : | |
| Defendants | : | |

### MEMORANDUM OPINION

This matter came before the Court on January 27, 2017, on Defendant Mail Media, Inc.'s motion to dismiss. The Court has considered the memoranda filed by the parties, argument of counsel and applicable case law.

### BACKGROUND

In August 2016, articles were published on the internet allegedly containing several false and highly defamatory statements about Plaintiff Melania Trump. Plaintiff filed a three count complaint against Defendants Mail Media, Inc. ("MMI") and Webster Griffin Tarpley ("Tarpley") alleging defamation against Tarpley (Count I), defamation against MMI (Count II), and interference with actual and/or prospective business relationships against both defendants (Count III).[1]

Defendant MMI moved to dismiss the Complaint against it on the grounds that this Court lacks personal jurisdiction over it under Md. Rule 2-322 (a)(1) and, in the alternative, the lawsuit against it should be dismissed under the doctrine of forum non conveniens, pursuant to Md. Code Ann., Cts. and Jud. Proc. §6-104(a).

---

[1] The Court dismissed without prejudice Plaintiff's claim in Count III as to Defendant Tarpley.

## DISCUSSION

### A.  Whether Mail Media, Inc. is Subject to Jurisdiction in Maryland

Plaintiff filed this lawsuit against MMI based on an article about her that was published in August 2016 on the news website MailOnline during the height of the U.S. Presidential campaign. The parties dispute whether Mail Media is the publisher of the website located at www.dailymail.com / www.dailymail.co.uk (collectively "MailOnline") on which the subject articles were placed.  Plaintiff contends that MMI is the publisher and that the Chief Executive Officer of MMI is also the publisher of MailOnline. Defendant MMI asserts that MailOnline is owned and published by Associated Newspapers Ltd. ("ANL"), a United Kingdom-based company.  But rather than argue that Plaintiff has sued the wrong entity and the case should be dismissed on that ground alone, Defendant MMI has moved to dismiss on jurisdictional grounds that would apply even if it were the correct entity or if the correct entity had been sued.

MMI argues that although Plaintiff is a resident of the State of New York, the MailOnline website is owned and published by a United Kingdom company and has its principal office in New York, Plaintiff chose to file her lawsuit in Maryland -- a jurisdiction with no connection to the claims against MMI or MailOnline. Moreover, MMI argues that Plaintiff's Complaint does not contain any allegations connecting the MailOnline article at issue ("the Article") directly to Maryland. The Article is about Plaintiff, a New York resident, and the statements that form the basis of her claims concern events that allegedly took place in New York or foreign countries.

Plaintiff on the other hand contends that the publication of defamatory statements by a national publication with significant circulation in the forum state gives rise to personal jurisdiction. In addition, the interactivity and targeted conduct of MMI and its website, MailOnline, is more than sufficient to justify the assertion of jurisdiction of Plaintiff's claims.

Plaintiff further contends that MMI purposefully injects itself into the United States to reap an economic benefit. Plaintiff argues that MailOnline has approximately 4,600 article views per hour in Maryland and 72,600 unique browsers per day from Maryland and that MailOnline has a special U.S.-facing homepage that publishes extensive local coverage, including coverage of events in Maryland, and targets advertisements to Maryland residents, from Maryland-area businesses. Plaintiff's Opposition, Exhibit B-4. MMI targets its stories and its advertising to its U.S. readers, and specifically to its Maryland readers, generating revenue in U.S. advertising. Plaintiff asserts these specific ads to local Maryland businesses, as shown in the evidence provided in support of her opposition, are not "random" and "fortuitous" contacts.

The Court of Appeals of Maryland in *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 14 (2005), reaffirmed the conditions necessary for a court to exercise personal jurisdiction over a foreign defendant:

> Whether a court may exert personal jurisdiction over a foreign defendant entails dual considerations. First, we consider whether the exercise of jurisdiction is authorized under Maryland's long arm statute, Md. Code (1973, 2002 Repl. Vol.), § 6-103 of the Courts and Judicial Proceedings Article…. Our second task is to determine whether the exercise of jurisdiction comports with due process requirements of the Fourteenth Amendment. We have consistently held that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution.

(Citations omitted).  The Court also reaffirmed the constitutional considerations in determining personal jurisdiction:

> Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination . . . A court's exercise of personal jurisdiction over a nonresident defendant satisfies due process requirements if the defendant has "minimum contacts" with the forum, so that to require the defendant to defend its interests in the forum state "does not offend traditional notions of fair play and substantial justice."
> 　　　　*　　　*　　　*　　　*

3

The standard for determining the existence of personal jurisdiction over a nonresident defendant depends upon whether the defendant's contacts with the forum state also provide the basis for the suit. If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent contacts with the State. "To establish general jurisdiction, the defendant's activities in the State must have been 'continuous and systematic.' "

*Id.* at 22 (citations omitted).

The Maryland long arm statute, Md. Code Ann. Cts. & Jud. Proc. § 6-103, provides:

(a) *Condition.* If jurisdiction over a person is based solely upon this section, he may only be sued on a cause of action arising from any act enumerated in this section.

(b) *In general.* A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) transacts any business or performs any character of work or services in this State;

(2) contracts to supply goods, food, services, or manufactured products in the State;

(3) causing tortious injury in this State by an act or omission in this State;

(4) causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

(c) *Applicability to computer information and computer programs.*-(1)(i) In this subsection the following terms have the meanings indicated.

(ii) "Computer information" has the meaning stated in § 22-102 of the Commercial Law Article.

(iii) "Computer program" has the meaning stated in § 22-102 of the Commercial Law Article.

(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

The burden is on Plaintiff to establish that the Court has jurisdiction over MMI. Plaintiff must demonstrate that MMI has sufficient "minimum contacts" with Maryland "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

4

*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This test requires a showing that the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws," such that it should "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The "'purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous" or "attenuated" contacts.'" *Burger King*, 471 U.S. at 475. Moreover, personal jurisdiction based on minimum contacts can be either "general" or "specific," with specific jurisdiction requiring a demonstration that "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472.

In a jurisdictional analysis, "it is petitioner's purposeful contacts with [that] state, not with the United States, that alone are relevant." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885-86 (2011). In *Eagle Coffee Co. v. Eagle Coffee Int'l, Inc.*, No. CIV. L-09-2585, 2010 WL 481201, at *4 (D. Md. Feb. 4, 2010), in discussing the facts the Court stated that, "nothing on [the defendant's] website suggests that it intended to target the residents of Maryland . . . more than residents of any other state." In *Young v. New Haven Advocate*, 315 F. 3d 256, 263 (4th Cir. 2002), a Virginia prison warden brought an action against the publishers of Connecticut newspapers that published allegedly libelous articles on the papers' websites (which were accessible in Virginia). The Court of Appeals for the Fourth Circuit found that Virginia lacked personal jurisdiction. The Court explained:

> [T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience. Something more than posting and accessibility is needed to indicate that the newspapers purposefully

(albeit electronically) directed their activity in a substantial way to the forum state.

315 F. 3d at 263.

The Supreme Court set forth an "effects" test in *Calder v. Jones*, 465 U.S. 783 (1984), and *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984), that determines whether jurisdiction is proper concerning the effects of the defendant's wrongful conduct. In *Calder*, a newspaper based in Florida published an allegedly defamatory story about Shirley Jones, an actress who lived and worked in California. The Supreme Court held that there was personal jurisdiction over the journalists who wrote the story in California because their "intentional, and allegedly tortious, actions were expressly aimed" at a California resident." 465 U.S. at 789. In *Keeton*, the Supreme Court held that New Hampshire could assert jurisdiction over the publisher of Hustler Magazine in a libel case concerning articles appearing in five different issues of the monthly magazine. The defendant in *Keeton* sold thousands of copies of the magazine a month in New Hampshire. The Court found that because "a substantial number of copies [we]re regularly sold and distributed" in the state, the defendant had "exploited the New Hampshire market" and there was "no unfairness in calling it to answer for the contents of [its] publication" there. 465 U.S. at 781.

Plaintiff relies on *Keeton* in arguing for personal jurisdiction in this case. She focuses on the distribution of the defendant's publication in the jurisdiction, not the targeting of harm towards the plaintiff residing in the jurisdiction. According to the "Stats" page on MailOnline, the average "Article Views" for Maryland is approximately 4,595 per hour, or approximately 72,600 daily unique browsers in Maryland. Plaintiff relies on an article on *Advertising Age*, that MailOnline earns revenues primarily, if not exclusively, from advertising, which are tied directly to the number of visitors to MailOnline. MMI contends that *Keeton* does not apply because the

Supreme Court's ruling was based on Hustler's paid circulation, while MailOnline is viewed and circulated on the internet without charge.   Moreover, the Article Views and daily unique browsers in Maryland represent a very small percentage of the total.

The overwhelming weight of authority holds that merely operating a website - even if it is a popular website that makes money from advertising, like those operated by *The Guardian*, *Gawker*, *New York Post*, or *Facebook* - does not constitute "purposeful availment" under *Keeton*. In *Huizenga v. Gwynn, et al.*, 2016 WL 7385730 (E.D. Mich. 2016), the Court expressly "declined [plaintiff's] invitation to consider as part of [the court's] *Keeton* reasonableness analysis the number of visits to the [New York] Post's website by Michigan residents." 2016 WL 7385730 at *9 n.5. As the Court explained, "*Keeton* is focused on the extent to which the defendant publication *intentionally* enters the forum market, and the Post does not intentionally enter the Michigan market when Michigan residents visit its webpage." *Id.* Similar to *Huizenga*, in the case at hand, MMI does not intentionally enter the Maryland market specifically, but rather the United States market as a whole.

Based on the affidavits and exhibits submitted by the parties, the unrebutted evidence establishes that MMI's influence in the United States is on a national basis.   The standard contacts associated with outlets like *The Guardian*, *Gawker*, *New York Post*, or *Facebook*, and the revenue resulting from advertisements associated with those contacts, have been ruled insufficient to establish personal jurisdiction over the publishers, because there was no evidence that the website specifically targeted the residents of the forum state more than, or in a different way than, any other state. *See Johnson v. Gawker Media, LLC*, 2016 WL 193390 (E.D. Mo. Jan. 15, 2016); *Brennerman v. Guardian News & Media Ltd.*, 2016 WL 9484466, at *8 (D. De. Dec. 29, 2015); *Gullen v. Facebook.com, Inc.*, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016).

Plaintiff argues that advertisements on MailOnline target users based, in part, upon their geographic location, including Maryland.  She produced evidence that during a ten-day period from December 19-29, 2016, MailOnline displayed various advertisements to a Maryland resident, from Maryland-area business and institutions, including a Bethesda-based real estate agent, a Germantown hospital, and a Rockville jeweler. *See* Plaintiff's Opposition, Exhibits C-1 to C-12.  But the fact that MailOnline maintains a webpage through which it solicits advertisers in the United States is insufficient.

Plaintiff failed to establish that MMI has targeted Maryland specifically with its advertisements. Affidavit testimony provided by Chief Operating Officer of Mail Online Richard Caccappolo explained that advertisements are sold two ways: directly to business owners, or via third party "programmatic advertising," which MMI has no control or knowledge of how ads are dispersed. Since it is documented that MMI has sold no advertisements directly to Maryland business owners, any advertisements seen by Maryland residents while viewing MailOnline are a result of programmatic advertising, not MMI's direct targeting. The requirement that a defendant website operator "manifest intent of engaging in business or other interactions within that state in particular" has been the consistent law of courts in Maryland and elsewhere. *Carefirst of Md., Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *Am. Ass'n of Blood Banks v. Boston Paternity, LLC*, 2009 WL 2366175, at *9 (D. Md. July 28, 2009) (finding no jurisdiction where defendant website promoted "nationwide service," which "courts have repeatedly found insufficient to satisfy the '[manifest] intent' standard").

While Plaintiff contends that in the four months leading up to the filing of this action, MailOnline published no less than 141 articles and 14 videos on topics that are local to Maryland and not of broader national or international interest, this is insufficient to subject MMI to this

Court's jurisdiction. Plaintiff's reliance on *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1230-31 (9th Cir. 2011), is misplaced.

In *Mavrix Photo*, the U.S. Court of Appeals for the Ninth Circuit held that an Ohio-based publisher of an online-only publication that exploited the national market was subject to jurisdiction in the state of California in a suit brought by a Florida corporation. Like MailOnline, the defendant made money from third-party advertisements on the website for jobs, hotels, and vacations, among other things, in California. The Court in *Mavrix Photo* found that defendant "expressly aimed [its conduct] at the forum state" because it used plaintiff's copyrighted photographs "as part of its exploitation of the California market for its own commercial gain." *Id.* at 1219. But as stated in the Supplemental Affidavit of Alexander Bannister, of the 141 articles that Plaintiff argues were "local to Maryland and not of broader . . . interest," two-thirds of them are actually wire stories primarily from the Associated Press. Much like the third party advertisements in programmatic advertising, these wire stories are uploaded automatically to the Website from third party wire services and are not created, or even selected, by MailOnline's editorial staff. *See* Supplemental Affidavit of Alexander Bannister, Group Managing Editor of Associated Newspapers, Ltd., ¶ 4.

Moreover, the Court in *Mavrix Photo* held that there was jurisdiction over a copyright claim against the operator of the website because of the "specific focus on the California-centered celebrity and entertainment industries." The Court went on to say that, "[b]ased on the website's subject matter, as well as the size and commercial value of the California market," it was not unreasonable to find jurisdiction in California over "a website whose economic value turns, in significant measure, on its appeal to Californians." 647 F.3d at 1230. The same cannot be said about MailOnline, which indisputably has a national/international focus, with, at most,

occasional stories about Maryland, primarily from wire service stories, and no "specific focus" on the state.

*Hare v. Richie*, 2012 WL 3773116 (D. Md. 2012), also does not support a finding of personal jurisdiction in this case. In *Hare* the Court found that "[thedirty.com] website specifically directs electronic activity toward Maryland though the 'Baltimore' section of its website," which "demonstrates an intent to direct the content to users in that geographic area." *Id.* at *11. Although thedirty.com did "not tailor its advertisements to a geographic area," the Court held that "targeting advertisements to Maryland might demonstrate intent to engage in business with Marylanders." *Id.* at *12. Moreover, in *Hare*, the libel plaintiff was a Maryland resident, and the defendant operated a gossip website. The website's front page provided a menu with a list of cities, including Baltimore, where the plaintiff lived. Clicking on a city brought the reader to gossip associated with a specific city. The plaintiff was referenced in headlines multiple times as a "Baltimore Stalker" in the specific Baltimore section of the website, with posts warning "the woman of Baltimore" about him. *Id.* at *2. In the case at hand, the Article was written about a New York resident by a newspaper in the United Kingdom, and also published on a general news website that cannot be described as having a Maryland focus, thus distinguishing this case from *Hare*.

In this case the Article was researched, written for and published in a United Kingdom newspaper and published on a general news website that did not focus on Maryland. The Article was uploaded by MailOne staff in London and MailOne staff in New York posted the Article to the U.S. homepage of MailOnline. No reporter or editor traveled to Maryland in the course of reporting, editing, or publishing the Article. *See* Affidavit of Alexander Bannister. There are no advertising or business acts conducted by MMI that were purposefully directed to Maryland.

Further there is nothing about the parties that connects the case against MMI to Maryland – MMI does not have an office in Maryland, Plaintiff does not live in Maryland, and the witnesses are not located in Maryland. It would be unreasonable as a matter of constitutional due process for this Court to exert jurisdiction over MMI or MailOnline in the State of Maryland. While the Court in ruling on the motion to dismiss filed by Defendant Tarpley found that Plaintiff has sufficiently stated a claim for defamation, thus allowing the case against Tarpley to proceed forward in this Court, that does not mean that the case against MMI should proceed in this Court as well. Accordingly, the motion to dismiss of MMI is granted.

### B. Whether Additional Discovery is Necessary

MMI filed a Motion for Protective Order and Stay of Discovery (DE 44) on December 9, 2016. At that time it had not filed its motion to dismiss but counsel for MMI informed the Court at the scheduling hearing held on December 12, 2016, that a motion to dismiss would be filed shortly. The Court informed the parties that MMI would be held harmless from the discovery requests until the Court ruled on the motion for protective order. MMI filed its motion to dismiss on December 19, 2016. (DE 66) The motion was supported by affidavits and exhibits.

Plaintiff filed her opposition on January 3, 2017. (DE 71) Her opposition was supported by three declarations with attached exhibits. The Declarations and attached exhibits are approximately two inches thick. Exhibit A is the Declaration of Ryan J. Stonerock, an attorney with the firm Harder Mirell & Abrams LLP, counsel for Plaintiff, and an attorney of record in this case. Mr. Stonerock stated that discovery had been served on MMI but had not been responded to. Mr. Stonerock attached thirty-four exhibits to his declaration, all but four of which contained publicly available information about MMI that was used to support Plaintiff's opposition. *See* Exhibit A to Plaintiff's Opposition.

11

Exhibit B contained that Declaration of Theodore S. Nguyen, Esquire, an attorney with the firm Harder Mirell & Abrams LLP, counsel for Plaintiff. Mr. Nguyen stated that he had conducted a search on MailOnline and attached the results pertaining to Maryland in nineteen exhibits.

Exhibit C is the Declaration of Callie Carnemark, an attorney with the law firm of Miller, Miller & Canby, Chtd. She attached to her Declaration sixteen exhibits that were copies of relevant excerpts of preservation of webpages referencing Maryland. *See* Exhibit C to Plaintiff's Opposition.

While Plaintiff supported her Opposition with affidavits and extensive exhibits, she contended that jurisdictional discovery was warranted because there was a "substantial factual dispute between the parties as to MMI's targeting (as the Plaintiff suggests) or lack thereof (as MMI suggests) of Maryland Residents." Opposition, p. 20. Plaintiff further noted that MMI had not "responded to any discovery, including discovery relevant to personal jurisdiction issues." *Id.* Despite its motion for protective order and stay of discovery, MMI subsequently did respond to Plaintiff's request for discovery pertaining to the jurisdictional issue.

At the hearing on MMI's motion to dismiss, MMI's counsel informed the Court that all of the jurisdictional discovery requested by Plaintiff had been provided and that any further items sought did not exist. Plaintiff's counsel took contradictory positions on whether additional discovery was necessary. Plaintiff's counsel at one point stated that more jurisdictional discovery was needed because he wanted the opportunity to depose the persons who had provided affidavits in support of MMI's motion to dismiss as well as a corporate designee. Counsel also contended that some of the written discovery responses provided by MMI were not sufficient. When asked by the Court to list the specific deficiencies, however, counsel was unable to

provide any examples.  Moreover, counsel also stated that he did not believe that jurisdictional discovery was necessary because there was so much information in the public record that supported Plaintiff's position.  Counsel referred to the information as "overwhelming."

Despite the extensive affidavits submitted by Plaintiff with her opposition, and the affidavits and exhibits submitted by MMI, Plaintiff was able to offer only speculation and conclusory assertions about contacts between MMI and Maryland.  And as the Court of Appeals for the Fourth Circuit held in *Carefirst of Md. Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003), "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."

In *Beyond Systems, Inc. v. Realtime Gaming Holding Company, LLC, et al.*, 388 Md. 1 (2005), a business that received numerous spam e-mails advertising online gambling sued the company that developed the software and its holding company. Defendants moved to dismiss for lack of jurisdiction and submitted an affidavit establishing that neither company had any contacts with the State of Maryland because they were not incorporated in Maryland, they did not conduct business in Maryland, and they were not involved in the transmission of the e-mails in issue. This Court dismissed the complaint and the plaintiff appealed.  One of the allegations raised in the appeal was whether the lower court had abused its discretion in denying the plaintiff's request for discovery.  The Court of Appeals found that the plaintiff had failed to provide any evidence to support any substantive contact with Maryland or connection with the conduct giving rise to this suit. It further found that the trial court did not abuse its discretion in denying the plaintiff's request for discovery:

> We do not find that the trial court's decision in the present case is beyond the decision that a reasonable person would make in light of the fact that BSI was

13

unable to produce *any* evidence of a connection between Realtime Gaming and KDMS, on the one hand, and windowscasino.com and Thom, on the other, beyond a link leading to an IP address at which individuals could download the software designed by KDMS.

388 Md. at 28-29.

In her Opposition, Plaintiff relies on *Androutsos v. Fairfax Hospital*, 323 Md. 634 (1991), and *Swarey v. Stephenson*, 222 Md. App. 65 (2015), in arguing that jurisdictional discovery is warranted. But as indicated, MMI did provide discovery on the jurisdiction issue. Plaintiff is not entitled to take depositions of the persons who submitted affidavits or corporate designees. The Court of Appeals in *Beyond Systems, Inc.* noted that "[i]f facts are necessary in deciding the motion [to dismiss] the court may consider affidavits or other evidence adduced during an evidentiary hearing." 388 Md. at 12. This Court properly considered the affidavits and exhibits submitted by both parties. But even considering the "overwhelming" information that Plaintiff submitted in support of her motion, Plaintiff did not present factual allegations that suggested with reasonable particularity the possible existence of the necessary minimum contacts. Accordingly, the Court finds that no additional discovery is required.

## CONCLUSION

For the foregoing reasons, Defendant Mail Media, Inc.'s motion to dismiss is GRANTED. Plaintiff's request for further jurisdictional discovery is DENIED.

A separate order will be entered.

February 1, 2017

**SHARON V. BURRELL, Judge**
Circuit Court for Montgomery County, Maryland

14

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| MELANIA TRUMP | : | |
| **Plaintiff** | : | |
| v. | : | Case No. 424492-V |
| WEBSTER GRIFFIN TARPLEY, et al. | : | |
| **Defendants** | : | |

## **ORDER**

Upon consideration of Defendant Mail Media's Motion to Dismiss and Plaintiff's Opposition, and for the reasons set forth in the accompanying memorandum opinion, it is this 1st day of February, 2017, by the Circuit Court for Montgomery County, Maryland, hereby

ORDERED, that Defendant Mail Media's Motion to Dismiss (DE 66) is GRANTED; and it is further

ORDERED, that the Complaint against Defendant Mail Media is DISMISSED WITHOUT PREJUDICE. However, the claims against this Defendant may not be refiled in Maryland; and it is further

ORDERED, that Mail Media's Motion for Protective Order and Stay of Discovery (DE 44) is GRANTED.

_Sharon V. Burrell_
**SHARON V. BURRELL, Judge**
Circuit Court for Montgomery County, Maryland