# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORP, AND JOHN HURRY, )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>THE DEAL, LLC AND WILLIAM MEAGHER, )<br>)<br>Defendants.  )<br>) | CASE NO. 1:16-CV-00545<br><br>Hon. Joseph Normand Laplante |

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
# PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

SHAHEEN & GORDON, P.A.
Steven M. Gordon
NH Bar No. 964
107 Storrs Street
P.O. Box 2703
Concord, NH 03302-2703
(603) 225-7262
sgordon@shaheengordon.com

DAVIS WRIGHT TREMAINE LLP
Elizabeth A. McNamara (*pro hac vice*)
John M. Browning (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
(212) 489-8340
lizmcnamara@dwt.com
johnbrowning@dwt.com

*Attorneys for Defendants The Deal, LLC and William Meagher*

**TABLE OF CONTENTS**

                                                                   **Page**

INTRODUCTION ............................................................................................................. 1

    I.    PLAINTIFFS HAVE NOT ESTABLISHED PURPOSEFUL AVAILMENT ...... 2

    II.    PLAINTIFFS' CLAIMS ARE NOT ADEQUATELY RELATED TO DEFENDANTS' MEAGER CONTACTS WITH NEW HAMPSHIRE ............... 7

    III.    IT WOULD BE UNREASONABLE TO EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS IN NEW HAMPSHIRE ....................... 8

    IV.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ..................................................................................................... 10

CONCLUSION .............................................................................................................. 10

4840-7463-9683v.3 0090219-000012

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A Corp. v. All Am. Plumbing Inc.*,
   812 F.3d 54 (1st Cir. 2016) ...................................................................................................8

*Calder v. Jones*,
   465 U.S. 783 (1984) ..........................................................................................................2, 6

*Chaiken v. VV Publ'g Corp.*,
   119 F.3d 1018 (2d Cir. 1997) ................................................................................................4

*Christian v. Barricade Books, Inc.*,
   No. 02-408-B, 2003 U.S. Dist. LEXIS 8555, DNH 078 (D.N.H. May 15,
   2003) ......................................................................................................................................7

*Conlin Enter. Corp. v. SNEWS, LLC*,
   No. 2 07 cv 922, 2008 U.S. Dist. LEXIS 23220 (D. Utah Mar. 24, 2008) ................................6

*Cossaboon v. Maine Med. Ctr.*,
   600 F.3d 25 (1st Cir. 2010) ...................................................................................................6

*Donatelli v. NHL*,
   893 F.2d 459 (1st Cir. 1990) .................................................................................................9

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) .................................................................................................4

*Gordy v. Daily News, L.P.*,
   95 F.3d 829 (9th Cir. 1996) ..............................................................................................3, 5

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) ..................................................................................................... passim

*McGee v. International Life Ins. Co.*,
   355 U.S. 220 (1957) ..............................................................................................................3

*Noonan v. Winston Co.*,
   135 F.3d 85 (1st Cir. 1998) .......................................................................................3, 4, 5, 6

*Ouazzani-Chahdi v. Greensboro News & Record, Inc.*,
   No. H-05-1898, 2005 U.S. Dist. LEXIS 47126 (S.D. Tex. Sept. 27, 2005),
   *aff'd*, 200 F. App'x 289 (5th Cir. 2006) .................................................................................4

*R&R Auction Co. v. Johnson*,
   No. 15-cv-199-PB, 2016 U.S. Dist. LEXIS 67273, DNH 195 (D.N.H. May 23,
   2016) ......................................................................................................................................8

*Rodriguez Salgado v. Les Nouvelles Esthetiques*,
    218 F. Supp. 2d 203 (D.P.R. 2002) .............................................................................. 3, 4, 6

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995) ........................................................................................... 8, 9

*Scherr v. Abrahams*,
    No. 97 C5453, 1998 U.S. Dist. LEXIS 8531 (N.D. Ill. May 29, 1998) ............................. 4

*Schnapp v. McBride*,
    64 F. Supp. 2d 608 (E.D. La. 1998) ................................................................................... 4

*Sefton v. Jew*,
    201 F. Supp. 2d 730 (W.D. Tex. 2001) ............................................................................. 6

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ........................................................................................... 8, 9

*United States v. Swiss American Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001) ......................................................................................... 7, 10

*Wolfe v. Gooding & Co.*,
    No. 14-cv-4728, 2015 U.S. Dist. LEXIS 25165 (D.N.J. Mar. 3, 2015) ............................. 5

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997) ............................................................................ 3, 5, 6

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint for lack of personal jurisdiction.[1]

## INTRODUCTION

Plaintiffs' opposition brief confirms that the contacts between Defendants and New Hampshire are far too remote to satisfy the requirements of due process. Plaintiffs do not contest the multitude of factors that weigh overwhelmingly in favor of dismissing their complaint for lack of personal jurisdiction, including the fact Plaintiffs and Mr. Meagher have no connection with New Hampshire whatsoever, that The Deal's only connection with New Hampshire is one subscription to Dartmouth College (which was never used to access the Articles in suit), that Defendants receive no revenue from New Hampshire because Dartmouth pays for its subscription out of a Georgia bank account, that Defendants' news reports target institutional readers based in metropolitan financial centers (rather than New Hampshire), that the Articles do not mention or have anything to do with New Hampshire, and that this entire lawsuit is merely a pretext for forcing Defendants to reveal confidential source(s) because that information might prove useful in advancing an entirely separate lawsuit in Arizona.[2]

Given these undisputed facts, Plaintiffs acknowledge that they cannot establish personal jurisdiction via the "effects test" adopted by the Supreme Court to determine purposeful availment.

---

[1] Unless otherwise specified, capitalized and abbreviated terms will have the same definition that they had in Defendants' moving memorandum of law (Defs. Mem.) and supporting declarations or in Plaintiffs' opposition brief (Opp. Br.) and supporting declarations.

[2] Plaintiffs' efforts to use litigation in multiple forums to achieve their goals is not "extraneous and fanciful" with regards to the personal jurisdiction analysis, as Plaintiffs suggest. Opp. Br. 2. *Keeton* specifically warns against the "harassment resulting from multiple lawsuits." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984). But just this week, Defendant Meagher was forced to file a motion to quash in the Northern District of California. Plaintiffs issued the subpoena out of their action pending against FINRA in the District of Arizona and sought to compel Mr. Meagher to testify about his confidential sources, despite the fact that his testimony is absolutely privileged under various reporters' shield laws. *See* Exhibits A, B annexed to the accompanying Reply Declaration of John M. Browning. The District of Arizona and Northern District of California mark the third and fourth fora through which Plaintiffs have attempted to advance their claims against Defendants.

1

*Calder v. Jones,* 465 U.S. 783 (1984); Opp. Br. 8 n.3.  Instead, Plaintiffs now admit that their case depends entirely on "the distribution of the defendant's publication in the jurisdiction" of New Hampshire (Opp. Br. 9 n.3), which amounts to a single, isolated subscription.  Under settled Supreme Court and First Circuit law, this vanishingly small distribution falls far short of the substantial circulation required to establish personal jurisdiction over an out-of-state publisher in a libel suit.  Moreover, since it is undisputed that the Dartmouth College subscription was never used to access the Articles, Plaintiffs' claims cannot fairly be said to be related to The Deal's sole contact with New Hampshire.  Even if Dartmouth's subscription satisfied the due process requirement of minimum contacts (which it assuredly does not), it would be manifestly unreasonable to force Defendants to litigate in New Hampshire given the myriad factors weighing against the application of personal jurisdiction.  Finally, discovery would be futile and must be denied in light of Plaintiffs' inability to make a colorable case for personal jurisdiction.

## I.  PLAINTIFFS HAVE NOT ESTABLISHED PURPOSEFUL AVAILMENT

Plaintiffs rely entirely on Defendants' one New Hampshire subscriber to establish personal jurisdiction under *Keeton*, but they have failed to identify a single case establishing purposeful availment over an out-of-state libel defendant solely on the basis of a single, isolated subscription sold to a forum-state resident.  To the contrary, courts have consistently declined to exercise personal jurisdiction over libel cases involving far more than one subscription, particularly when, as here, the plaintiff has no connection whatsoever to the forum state.

The Supreme Court and First Circuit have both rejected Plaintiffs' remarkable claim that "the number of New Hampshire subscribers" to *The Deal Pipeline* "is irrelevant" to the personal jurisdiction inquiry.  Opp. Br. 12.  Although Plaintiffs cite the Supreme Court's decision in *Keeton* at length, they conspicuously omit the holding of that case, which states that "[t]here is no unfairness in calling [an out-of-state publisher] to answer for the contents of [their]

2

publication wherever a ***substantial number of copies*** are regularly sold and distributed." *Keeton*, 465 U.S. at 781 (emphasis added).[3]  A "substantial" circulation is thus required to establish personal jurisdiction, such as the between 10,000 and 15,000 copies of a magazine sold to thousands of New Hampshire subscribers in *Keeton*. *See also Gordy v. Daily News, L.P.*, 95 F.3d 829, 834 (9th Cir. 1996) ("[The Supreme] Court permitted the suit [in *Keeton*] because Hustler Magazine regularly distributed thousands of magazines in the state.").

The substantial circulation requirement was expressly adopted by the First Circuit in *Noonan*, which Plaintiffs fail to mention despite the fact that it is controlling precedent.  As per *Noonan*, the Supreme Court "has held [in *Keeton*] that a publisher's regular ***circulation of a large number of magazines*** … was sufficient to support jurisdiction." *Noonan v. Winston Co.*, 135 F.3d 85, 91 (1st Cir. 1998) (emphasis added).  *See also Rodriguez Salgado v. Les Nouvelles Esthetiques*, 218 F. Supp. 2d 203, 209 (D.P.R. 2002) ("*Salgado*") ("The First Circuit Court of Appeals has held that personal jurisdiction may not be exercised over a nonresident defendant in a defamation and/or invasion of privacy action where the allegedly offending material was not widely distributed within the forum."). Simply put, the substantial circulation requirement established by *Keeton* and *Noonan* cannot possibly be satisfied by a single New Hampshire subscriber to Defendants' publication.

Contrary to Plaintiffs' unsupported assertion (Opp. Br. 9), personal jurisdiction does not somehow come into existence because Dartmouth College purchased a subscription to *The Deal*

---

[3] The Supreme Court in *Keeton* never cites the 1% figure the Plaintiffs embrace; instead emphasizing the "regular monthly sales of thousands of magazines." *Id*. at 774.  Even so, the percentage of New Hampshire subscribers in this case is about 0.1% and Plaintiffs have not identified any cases permitting personal jurisdiction on such a small relative distribution.  Nor does Plaintiffs' reliance on dicta from *Zippo* suggesting that even a "single contact can be sufficient" support jurisdiction here. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Pa. 1997) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  *McGee* involved an action to enforce the life insurance contract at issue.  Here, Plaintiffs are not seeking to enforce the Dartmouth contract; rather, they are attempting to bootstrap jurisdiction merely by its existence.

3

*Pipeline*. Consider the facts of *Salgado* out of another district court in this Circuit, where the court flatly rejected the argument that *Noonan* confers personal jurisdiction over any out-of-state publisher with paid subscribers in the forum state. There, defendants were Florida-based publishers of a magazine with "approximately 20 subscribers – or about 0.1% of [the magazine's] total worldwide circulation" – located in Puerto Rico. *Salgado*, 218 F. Supp. 2d at 204. Plaintiffs, who were citizens of Puerto Rico, sought to bring a defamation claim against the defendants in the District of Puerto Rico on the basis of two videos that defendants had knowingly sold in Puerto Rico (with one copy being sold to one of the plaintiffs). *Id*. at 204-05. Noting that the twenty subscriptions sold to Puerto Rico residents "pale in comparison to… sales … in other jurisdictions," the court held that the deliberate "act of mailing the video to a single customer (other than Plaintiff) in Puerto Rico" was not "pervasive enough forum contact" to support a finding of purposeful availment. *Id*. at 211.[4] If there was no personal jurisdiction over out-of-state defendants on the basis of twenty forum-state subscribers and the deliberate mailing of allegedly defamatory material into the forum state, *a fortiori* there can be no New Hampshire jurisdiction over Defendants on the basis of a single New Hampshire subscriber.[5]

---

[4] *The Deal Pipeline* is not in the same category of "national publication[s] aimed at a nationwide audience" as Hustler Magazine. *Keeton*, 465 U.S. at 781. As Defendants explained in their moving papers, *The Deal Pipeline* readership is primarily financial institutions in major metropolitan centers and nearly half of its subscription revenue comes from New York. Defs. Mem. 5. Since New Hampshire is not part of The Deal's target audience, the isolated subscription sold to Dartmouth College cannot suffice to show that Defendants purposefully availed themselves of New Hampshire jurisdiction.

[5] Time and again, courts have refused to extend personal jurisdiction over out-of-state libel defendants with a far greater in-state subscription base than is at issue here. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 422 (5th Cir. 2005) (forty subscribers); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1024 (2d Cir. 1997) (four daily subscribers and an additional 183 copies of the Sunday edition "sold in Massachusetts through subscriptions and newsstands"); *Schnapp v. McBride*, 64 F. Supp. 2d 608, 609, 611 n.7 (E.D. La. 1998) (nineteen subscribers); *Scherr v. Abrahams*, No. 97 C5453, 1998 U.S. Dist. LEXIS 8531 (N.D. Ill. May 29, 1998) (approximately sixty subscriptions); *Ouazzani-Chahdi v. Greensboro News & Record, Inc.*, No. H-05-1898, 2005 U.S. Dist. LEXIS 47126, at *9 (S.D. Tex. Sept. 27, 2005) ("By mailing three copies of the *News & Record* to subscribers in Texas, Defendant cannot be said to have

Plaintiffs cite two cases in an effort to overcome the weight of authority against them, but even Plaintiffs' cherry-picked decisions fail to support extending personal jurisdiction over Defendants on the basis of a single subscriber. First, Plaintiffs rely, as predicted, on *Gordy v. Daily News, L.P.*, but omit the Ninth Circuit's admonition that a few copies of a periodical sent to forum-state subscribers will suffice only "when distributed in the state where the target is domiciled and will suffer most from damage to his reputation." *Gordy*, 95 F.3d 829, 834 (9th Cir. 1996); *see also* Defs. Mem. 21. Next, Plaintiffs turn to *Wolfe*, but again ignore the key fact that the plaintiff (as in *Gordy*) was a resident of the forum state. *See Wolfe v. Gooding & Co.*, No. 14-cv-4728, 2015 U.S. Dist. LEXIS 25165, at *1 (D.N.J. Mar. 3, 2015); *Gordy*, 95 F.3d at 831. In short, *Gordy* and *Wolfe* are readily distinguishable since "Plaintiffs are not residents of New Hampshire" and the Articles make no mention of New Hampshire whatsoever. Opp. Br. 8 n.3. Even in terms of a subscription base, *Wolfe* and *Gordy* both involved substantially higher circulations than are at issue here (fifty-five targeted mailings and eighteen subscriptions, respectively). In short, dismissal is required because Plaintiffs have failed to identify any cases holding that a single, isolated subscription suffices to confer personal jurisdiction over an out-of-state publisher.[6]

Nor does Plaintiffs' heavy reliance on the *Zippo* line of decisions change the substantial circulation requirement articulated in *Noonan* and *Keeton*. As Plaintiffs acknowledge, the "*Zippo* model does not supersede the traditional personal jurisdiction analysis, it merely complements it." Opp. Br. 9 (citation omitted). Far from creating an independent basis for

---

purposefully availed itself …."), *aff'd*, 200 F. App'x 289 (5th Cir. 2006).
[6] Plaintiffs incorrectly argue that personal jurisdiction can be exercised over Mr. Meagher because "the author of a published work is treated the same as a publisher for personal jurisdiction purposes." Opp. Br. 4 n.2. The cases Plaintiffs' cite for this proposition found personal jurisdiction to exist because the reporter "knew the book would be distributed and sold nationally." *Id.* (internal quotation marks omitted). However, since *The Deal Pipeline* is not a national publication, but is rather a financial news periodical targeting major institutions predominantly in metropolitan areas, Plaintiffs identify no basis or reason for Mr. Meagher to know that the Articles would be distributed to New Hampshire.

personal jurisdiction in cases involving electronic communications, the *Zippo* court emphasized that "[d]ifferent results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co.*, 952 F. Supp. at 1124; *see also Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35 (1st Cir. 2010) ("The mere fact that … an interactive site is accessible in New Hampshire does not indicate that [the operator] purposefully availed itself of the opportunity to do business in New Hampshire."). Accordingly, it makes no difference whether The Deal sold subscriptions to *The Deal Pipeline* via the internet, through the mail or over the phone: under *Keeton* and *Noonan*, the sale of a single subscription to a New Hampshire resident is not "pervasive enough forum contact" to support a finding of purposeful availment against an out-of-state publisher. *Salgado*, 218 F. Supp. 2d at 211.[7]

In sum, when the *Calder* effects test cannot be satisfied – as here – purposeful availment under *Keeton* and *Noonan* can only be established with a substantial circulation of content to the forum state. To allow Plaintiffs to sue Defendants in New Hampshire on the basis of a single New Hampshire subscription would create a kind of universal jurisdiction under which a libel plaintiff could bring suit against a journalist or publisher in any jurisdiction where even a single copy of his or her article was distributed at the request of a single in-state resident. The law expressly prohibits such a perverse result and requires dismissal of this action.

---

[7] The cases cited by Plaintiffs in support of their *Zippo* argument are readily distinguishable because all of those cases identified additional purposeful availment contacts that are not present here. Critically, in each of those cases, the plaintiff was resident in the forum state *and* the defendants had sold substantial numbers of subscriptions in the forum state. *See Zippo*, 952 F. Supp. at 1121 (plaintiff resided in forum state, defendant sold three thousand subscriptions to in-state residents, and defendants had entered into contracts with seven internet access providers in forum state); *Conlin Enter. Corp. v. SNEWS, LLC*, No. 2 07 cv 922, 2008 U.S. Dist. LEXIS 23220, at *22 (D. Utah Mar. 24, 2008) (defendants had sixty forum-state subscribers and the "explicit purpose" of allegedly defamatory newsletter "was to harm the Plaintiffs who are [forum-state] residents"); *Sefton v. Jew*, 201 F. Supp. 2d 730, 740 (W.D. Tex. 2001) (plaintiff was forum-state resident and defendants sold 695 forum-state subscriptions). These cases have little relationship to the situation here, where one subscription was sold to a New Hampshire resident and both the Plaintiffs and the Articles have nothing to do with New Hampshire.

## II. PLAINTIFFS' CLAIMS ARE NOT ADEQUATELY RELATED TO DEFENDANTS' MEAGER CONTACTS WITH NEW HAMPSHIRE

Plaintiffs' argument on the relatedness prong also fails because it fails to rebut (or even mention) Defendants' showing that no New Hampshire residents accessed the Articles through The Deal's subscription portal. Plaintiffs assert in conclusory fashion that their claims "arise from Defendants' New Hampshire related activities – a subscription agreement between Defendants and a New Hampshire resident." Opp. Br. 14. However, honing in on the relevant facts, it is clear that there is no nexus between Plaintiffs' tort claims and Dartmouth College's subscription to The Deal. As Defendants explained in their moving papers, internal tracking data shows that the Dartmouth College subscription was not used to access or read the allegedly defamatory Articles. *See* Lundberg Decl. ¶¶19-22, Defs. Mem. 12. And the court in *Barricade Books* found that the relatedness prong is not satisfied if the statements at issue remain "uncirculated" in New Hampshire. *Christian v. Barricade Books, Inc.*, No. 02-408-B, 2003 U.S. Dist. LEXIS 8555, at *9-10, 2003 DNH 078 at 9 (D.N.H. May 15, 2003) (finding no personal jurisdiction where allegedly defamatory book was shipped to New Hampshire but remained unsold); *Keeton*, 465 U.S. at 776 ("New Hampshire has a significant interest in redressing injuries that *actually occur* within the State.") (emphasis added). For fundamentally the same reason, the fact that no Dartmouth College user accessed or read the Articles through The Deal's online portal means that Defendants never "circulated" the Articles to any readers in New Hampshire through The Deal's subscription portal. In other words, Plaintiffs' tort claims cannot be said to arise out of the Dartmouth College subscription because Defendants have shown that nobody used that subscription to read the Articles at issue.[8]

---

[8] In their efforts to distinguish *Barrier Books* and *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001), Plaintiffs confuse relatedness and purposeful availment. Opp. Br. 14 n.4. The fact that Defendants sold Dartmouth College a subscription does not fix the jurisdictional problem that the subscription was not used to access the Articles at issue in this

### III.   IT WOULD BE UNREASONABLE TO EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS IN NEW HAMPSHIRE

Although the Court "need not dwell on the[] so-called 'gestalt factors'" in light of Plaintiffs' failure to demonstrate relatedness or purposeful availment, the reasonableness inquiry also supports dismissal of this action. *A Corp. v. All Am. Plumbing Inc.*, 812 F.3d 54, 61 (1st Cir. 2016). Assuming *arguendo* that Plaintiffs have made "a borderline showing of relatedness and purposeful availment" (which they have not), they are required to make "an especially solid showing of reasonableness" in order to justify the exercise of personal jurisdiction over Defendants in New Hampshire. *Sawtelle v. Farrell*, 70 F.3d 1381, 1396 (1st Cir. 1995). However, far from strongly supporting the exercise of personal jurisdiction over Defendants in New Hampshire, the reasonableness factors strongly favor dismissal. *Id*.

First, Plaintiffs fail to address (let alone justify) their opportunistic and retaliatory campaign of litigation gamesmanship against Defendants, which includes efforts to coerce Mr. Meagher into giving up confidential sources and forcing Defendants to incur the expense of drafting futile motion papers immediately before withdrawing their New York Complaint. *See* Defs. Mem. 6-9. Far from the "red herrings" Plaintiffs suggest, Opp. Br. 2, the First Circuit has explained that retaliatory intent "weighs heavily in the jurisdictional balance" because "it provides a mechanism through which courts may guard against harassment." *Ticketmaster-NY*, 26 F.3d at 211. Since "[s]uch considerations are important," Plaintiffs' conduct weighs heavily in favor of dismissal. *Id*.; *see also R&R Auction Co. v. Johnson*, No. 15-cv-199-PB, 2016 U.S. Dist. LEXIS 67273, at *9, 2016 DNH 195, at 9 (D.N.H. May 23, 2016) ("[T]he appearance of

---

case. Moreover, even if Plaintiffs established relatedness (which they have not), the Court should still take into account the evident "weakness[] of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994). Given the meager evidence of any link between Defendants in-state contact and Plaintiffs' New Hampshire claims, it would be fundamentally unfair to allow Plaintiffs to continue their campaign of litigation gamesmanship against Defendants in New Hampshire. *See* Defs. Mem. 13-14.

8

possible harassment … cuts strongly against jurisdiction.").

Second, Plaintiffs' have failed to demonstrate that New Hampshire has a significant interest in resolving this case. As the First Circuit has made clear, "New Hampshire has a far less compelling interest in" adjudicating a lawsuit such as this where the allegedly tortious acts "occurred almost entirely outside of New Hampshire." *Sawtelle*, 70 F.3d at 1395; *see also Donatelli v. NHL*, 893 F.2d 459, 472 (1st Cir. 1990) (interest of the forum factor weighs against jurisdiction when the forum state "has no real interest in adjudicating" the controversy "apart from a generalized concern for the rights of its own domiciliaries"); *Ticketmaster-NY*, 26 F.3d at 211. Since Plaintiffs have failed to identify any cases recognizing that New Hampshire has a strong interest in adjudicating this case, the interest of the forum factor weighs in favor of dismissal. Moreover, the obvious burden of forcing Defendants to litigate in New Hampshire also weighs against a finding of jurisdiction, whether or not that inconvenience is "special or unusual." Opp. Br. 17.

Last, Plaintiffs' interest in obtaining effective relief is severely undercut by their own undisputed conduct. The fact that Plaintiffs knew about the Articles from the time of their inception but waited three years to file suit demonstrates a lack of true concern about having this case decided on its merits, rather than exploiting it as a vehicle to obtain source information. Moreover, Plaintiffs' claim that they are unable to obtain relief in New York (Opp. Br. 16) rings hollow in light of the fact that they filed a substantially similar defamation complaint against Defendants there only to voluntarily withdraw it before Defendants could move for dismissal. Ultimately, there is no unfairness in depriving Plaintiffs of the ability to continue to use this lawsuit as a cudgel against Defendants.

Taking all the gestalt factors together, Plaintiffs have clearly failed to shoulder their heavy burden of making a strong showing that it would be reasonable for this case to proceed in New Hampshire. Accordingly, this case must be dismissed.

### IV.     PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Plaintiffs request jurisdictional discovery in an effort to forestall the inevitable dismissal of their case, but they have utterly failed to justify the imposition of that burden on Defendants. Jurisdictional discovery is only appropriate where Plaintiffs have made "a colorable case for the existence of *in personam* jurisdiction," which Plaintiffs have failed to do. *Swiss Am. Bank*, 274 F.3d at 625 (affirming denial of jurisdictional discovery). Plaintiffs fail "to present facts to the court which show why jurisdiction would be found if discovery were permitted," as they are also required to do. *Id*. at 626. Indeed, jurisdictional discovery has no conceivable benefit in this case since Plaintiffs case depends entirely on the already-disclosed fact that The Deal has one New Hampshire subscriber. Simply put, allowing Plaintiffs to commence jurisdictional discovery without an articulable reason to do so would be the very definition of a fishing trip.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of personal jurisdiction.

DATED:  March 2, 2017                                    Respectfully submitted,

                                                                            The Deal, LLC and William Meagher
                                                                            By Their Attorneys:
                                                                            SHAHEEN & GORDON, P.A.

                                                                            /s/ Steven M. Gordon
                                                                            Steven M. Gordon
                                                                            NH Bar No. 964
                                                                            107 Storrs Street, P.O. Box 2703
                                                                            Concord, NH 03302-2703
                                                                            (603) 225-7262
                                                                            sgordon@shaheengordon.com

                                                                            DAVIS WRIGHT TREMAINE LLP
                                                                            Elizabeth A. McNamara (*pro hac vice*)
                                                                            John M. Browning (*pro hac vice*)
                                                                            1251 Avenue of the Americas, 21st Floor
                                                                            New York, NY 10020-1104
                                                                            (212) 489-8240

10

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Defendants' Memorandum of Law in Support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) was served on the following persons on this date and in the manner specified herein:

<u>Electronically Served Through ECF</u>:
      George R. Moore, Esq.- gmoore@devinemillimet.com
      Christopher D. Hawkins, Esq. - chawkins@devinemillimet.com

<u>Via 1st Class Mail</u>

      Charles J. Harder, Esq. (*pro hac vice*) - charder@hmafirm.com
      Jordan Susman, Esq. (*pro hac vice*) - jsusman@hmafirm.com
      Steven Frackman, Esq. (*pro hac vice*) - sfrackman@hmafirm.com

Dated: March 2, 2017                              /s/ Steven M. Gordon
                                                                   Steven M. Gordon, NH Bar #964