# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

---

| | |
|---|---|
| Scottsdale Capital Advisors Corp. *et al.*, | Docket No. 1:16-cv-00545 |
| *Plaintiffs* | |
| v. | |
| The Deal, LLC, *et al.*, | |
| *Defendants* | |

---

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

DEVINE, MILLIMET & BRANCH, P.A.
George R. Moore, Esq.
NH Bar No. 1791
111 Amherst Street
Manchester, NH  03101

HARDER MIRELL & ABRAMS LLP
Charles J. Harder, Esq. (pro hac vice)
132 South Rodeo Drive, 4th Floor
Beverly Hills, CA 90212

{00081886;2}

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. JURISDICTIONAL DISCOVERY ..................................................................................... 2

III. ARGUMENT ....................................................................................................................... 4

    A.    The Deal's Discovery Responses Demonstrates That The Deal Purposefully Availed Itself Of Doing Business In New Hampshire ...................... 4

        1.    The Deal Solicited Dartmouth's Subscription ........................................... 4

        2.    The Articles Have Been Circulated To More Than 7,000 New Hampshire Residents ............................................................................... 5

        3.    Defendants' Argument That No One In New Hampshire Accessed The Defamatory Articles Is A Red Herring ............................................... 7

    B.    The Deal's Discovery Responses Demonstrate That Plaintiffs' Claims Are Related To Defendants' Contacts With New Hampshire ...................... 8

        1.    Legal Standard ............................................................................................ 8

        2.    Plaintiffs' Claims Arise Out Of And Are Related To The Deal's Activities In New Hampshire ..................................................................... 8

    C.    The Exercise Of Personal Jurisdiction Over Defendants In New Hampshire Is Reasonable ...................................................................................... 9

IV. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

<u>*Cases*</u>

*Deborah Heart & Lung Ctr. v. Children of the World Found., Ltd.*, 99 F. Supp. 2d 481 (D.N.J. 2000) .......... 6

*Foretich v. Glamour*, 741 F. Supp. 247 (D.D.C. 1990) .......... 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .......... 8

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .......... 7

*Salyer v. S. Poverty Law Ctr., Inc.*, 2009 WL 1036907 (W.D. Ky. Apr. 17, 2009) .......... 7

*Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) .......... 8, 9

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) .......... 5

*Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201 (1st Cir. 1994) .......... 8

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610 (1st Cir. 2001) .......... 4, 8

I.   INTRODUCTION

On May 15, 2017, the Court heard oral arguments on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). The Court did not decide the Motion on that day, and instead allowed Plaintiffs to conduct limited jurisdictional discovery.

Defendants' discovery responses conclusively demonstrate that (1) Defendants purposefully availed themselves of doing business in New Hampshire, (2) Plaintiffs' claims are related to Defendants' activities in New Hampshire, and (3) the exercise of personal jurisdiction over Defendants is reasonable.

**Defendant The Deal purposefully availed itself of doing business in New Hampshire**. Defendants have hung their entire Motion on the claim that The Deal has only one subscriber in New Hampshire. Motion at 3, 5, 6, 9, 12, 14, 16, 19, 20, 23. This statistic is misleading at best, because that one subscriber is Dartmouth College, and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *allowing the more than 7,000 students and faculty at Dartmouth access to* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

Defendants' claim that the contract with Dartmouth is somehow "random" or "fortuitous" is undercut by the dozens of communications between The Deal and Dartmouth. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *By directly targeting New Hampshire residents and knowingly interacting with dozens of New Hampshire residents*, The Deal purposefully availed itself of the

privilege of conducting business in the forum.  It was therefore reasonably foreseeable that it would be haled into court in New Hampshire if it published defamatory material.

**Plaintiffs' claims are related to The Deal's New Hampshire contacts**.  The Deal's primary activity in New Hampshire is the distribution of its publications to the Dartmouth community. ██████████████████████████████████████████████████████████████████████████████████████████.  The very purpose of The Deal's contacts with New Hampshire was to disseminate its products (including the defamatory Articles) to the widest possible readership in New Hampshire.  Because Plaintiffs' defamation claims arise directly these forum-state activities, they are related to The Deal's New Hampshire contacts.

**The Court's exercise of personal jurisdiction over Defendants is reasonable**.  Plaintiffs' claims are barred by the draconian statute of limitations in every other jurisdiction.  Therefore, in deciding this Motion, the Court is effectively deciding whether Plaintiffs will ever have an opportunity to litigate their claims against Defendants.  Notwithstanding the other factors in Plaintiffs' favor, Plaintiffs will be denied effective relief of any sort if the Court grants the Motion.

The Court should deny the Motion and allow Plaintiffs to go forward with their claims against Defendants in New Hampshire.

## II.   JURISDICTIONAL DISCOVERY

Per the Court's May 16, 2017 order (Dkt. 16), Plaintiffs served upon The Deal seven targeted interrogatories and five narrow requests for production. ████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

　　　████████████████████████████████████

████████████████████████████████████████

　　　　████████████████████████████████

　　　　████████████████████████████████

　　　　　████████████████████████████

　　　　　█████████████████████████████

　　　　　███████████

　　　　█████████████████████████████████

　　　　████████████████

　　These communications contradict The Deal's argument that its contract with Dartmouth was somehow "random and fortuitous." ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

　　Perhaps most damaging to The Deal's characterization of Dartmouth as "the only New Hampshire subscriber" (Motion at 5) is the fact that ██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ In other words, The

Deal is circulated to the entire 7,000 person Dartmouth community,[1] any one of whom can access the defamatory Articles.

## III. ARGUMENT

### A. The Deal's Discovery Responses Demonstrate That The Deal Purposefully Availed Itself Of Doing Business In New Hampshire

Purposeful availment is satisfied "when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623–24 (1st Cir. 2001). Defendants' discovery responses demonstrate that The Deal purposefully and voluntarily directed its activities toward New Hampshire.

#### 1. The Deal Solicited Dartmouth's Subscription

As part of their jurisdictional discovery, Plaintiffs requested that The Deal describe in detail the circumstances by which The Deal entered into its agreements with Dartmouth. Susman Decl. ¶ 2 Exh. 1 at 4. ███████████████████

███████████████████████████

████████████████████████████

██████████████████████████

███████████████████████████████

██████████████

---

[1] According to Dartmouth's Common Data set, for academic year 2016-17, there were 6,409 students and 750 instructional faculty. Susman Decl. ¶ 8 Exh. 7.



This continuing and active solicitation is exactly of the kind that demonstrates purposeful availment. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment").

**2.    The Articles Have Been Circulated To More Than 7,000 New Hampshire Residents**

From the outset, Defendants have tried to minimize their contacts with New Hampshire by claiming there is only one subscriber in the state. Although technically true, this argument is

extremely misleading. Unlike traditional print subscriptions that are distributed to a single individual, ███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████ Dartmouth's subscription is therefore a subscription on behalf of more than 7,000 New Hampshire residents,

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

      At the telephone conference on June 30, 2017, counsel for The Deal attempted to underplay these voluminous communications with New Hampshire residents as form emails that were generated automatically. However, courts have routinely found that using automated mailing lists to solicit business in a state satisfies the purposeful availment prong. *See e.g.*, *Deborah Heart & Lung Ctr. v. Children of the World Found., Ltd.*, 99 F. Supp. 2d 481, 487 (D.N.J. 2000) ("evidence of direct mail solicitation to residents of the forum state provides evidence of intent to avail oneself of the benefits of doing business in the forum state").

      It is disingenuous for The Deal to now treat the Dartmouth subscription as a single subscription, when it clearly saw it as a contract with, and gateway to, more than 7,000 New Hampshire residents.

### 3. Defendants' Argument That No One In New Hampshire Accessed The Defamatory Articles Is A Red Herring

Defendants allege that no one in New Hampshire accessed the defamatory Articles, and therefore Plaintiffs were not harmed in New Hampshire.[2] Reply at 7. This is incorrect. It is the publication and availability of the defamatory Articles that caused Plaintiffs' harm in New Hampshire. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) ("The general course of conduct in circulating magazines throughout the state was purposefully directed at New Hampshire, and inevitably affected persons in the state."); *see also Foretich v. Glamour*, 741 F. Supp. 247, 252 (D.D.C. 1990) (discussing statute of limitations, the Court held: "Defamation occurs on publication"); *Salyer v. S. Poverty Law Ctr., Inc.*, 2009 WL 1036907, at *2 (W.D. Ky. Apr. 17, 2009) ("The publication itself causes the defamation and the injury."). Perhaps not surprisingly, Defendants failed to cite a single case that supports their position that Plaintiffs must show that someone in the forum saw the defamatory Articles.

Lest there be any mistake, the defamatory Articles remain in circulation in New Hampshire as a result of The Deal's activities in the forum. ███████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ ████ The damage to Plaintiffs in New Hampshire is therefore manifest and continuing.

---

[2] Defendants' claim that Plaintiffs' purported lack of damages in New Hampshire goes to relatedness. Reply at 7. Defendants are wrong on the law. The effect of a defamatory article applies to the purposeful availment prong, not to relatedness. *Swiss Am. Bank*, 274 F.3d at 623.

B.  **The Deal's Discovery Responses Demonstrate That Plaintiffs' Claims Are Related To Defendants' Contacts With New Hampshire**

1.  **Legal Standard**

In their Reply and at oral argument, Defendants repeatedly confused and conflated the relatedness prong with purposeful availment.   Although there is overlap between purposeful availment and relatedness, the two prongs remain distinct.

"The relatedness inquiry separates general jurisdiction from specific jurisdiction cases. . . . The relatedness prong ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue. . . .When the nexus between the forum contacts and the cause of action is too attenuated, it violates fundamental fairness to force a defendant with non-continuous or non-systematic contacts to defend himself in that forum." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001).

In the First Circuit, "the relatedness test is a flexible, relaxed standard as suggested by the disjunctive nature of the requirement."  *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). Relatedness is satisfied when the claims arise out of *or* relate to the defendant's activates in the forum.  *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

2.  **Plaintiffs' Claims Arise Out Of And Are Related To The Deal's Activities In New Hampshire**

[redacted]

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████.

As a result of these specific contacts, The Deal circulated the defamatory Articles in New Hampshire. There is a straight line between The Deal's activities in the forum ████████ ██████████████████████████████████████████████████ ████████████) and the defamation claims at issue in this action. *See Sawtelle*, 70 F.3d at 1389 ("The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."). Plaintiffs' claims plainly arise out of and are related to The Deal's activities in New Hampshire.

C.  **The Exercise Of Personal Jurisdiction Over Defendants In New Hampshire Is Reasonable**

At oral argument, the Court correctly noted that Plaintiffs' claims would be time barred by the draconian statute of limitations in other jurisdictions. The fact that Plaintiffs' claims are barred elsewhere should weigh heavily in favor of the Court exercising personal jurisdiction over Defendants. In deciding Defendants' Motion regarding personal jurisdiction, the Court is actually deciding whether Plaintiffs will be entitled to *any* relief on their claims. *See Ticketmaster-New York, Inc.*, 26 F.3d at 209 (in determining the reasonableness of a particular forum, a court must weigh the plaintiff's interest in obtaining effective relief).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

Respectfully submitted,

SCOTTSDALE CAPITAL ADVISORS CORP.
AND JOHN HURRY
By their attorneys

DEVINE, MILLIMET & BRANCH, P.A.

Dated: July 6, 2017          By:          /s/ George Moore
George R. Moore, Esquire (NH Bar No. 1791)
111 Amherst Street
Manchester, NH   03101
603-669-1000


HARDER, MIRELL & ABRAMS, LLP

Dated: July 6, 2017          By:          /s/ Charles Harder
Charles J. Harder (*pro hac vice*)
132 South Rodeo Drive, 4th Floor
Beverly Hills, CA 90212
424-203-1600

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2017, I served a copy of the foregoing pleading upon Defendants' counsel in the manner specified herein:

**Electronically served through ECF**:

Elizabeth A. McNamara, Esq. – lizmcnamara@dwt.com
John M. Browning, Esq. - jackbrowning@dwt.com
Steven M. Gordon, Esq. – sgordon@shaheengordon.com