# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * * *
                                   *
SCOTTSDALE CAPITAL ADVISORS        *
CORP. AND JOHN HURRY,              *   16-cv-545-JL
          Plaintiffs,              *   May 15, 2017
                                   *   10:10 a.m.
     v.                            *
                                   *
THE DEAL, LLC AND WILLIAM          *
MEAGHER,                           *
          Defendants.              *
                                   *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:

For the Plaintiffs:   Jordan Susman, Esq.
                      Harder Mirell & Abrams, LLP
                      132 South Rodeo Drive, Fl4
                      Beverly Hills, CA 90212

                      Christopher D. Hawkins, Esq.
                      Devine Millimet & Branch, PA
                      111 Amherst Street
                      Manchester, NH  03101

For the Defendants:   Elizabeth A. McNamara, Esq.
                      Davis Wright Tremaine, LLP
                      1251 Avenue of the Americas, Fl21
                      New York, NY  11238-1104

                      Steven M. Gordon, Esq.
                      Shaheen & Gordon
                      PO Box 2703
                      Concord, NH  03302-2703

Court Reporter:       Sandra L. Bailey, LCR, CRR
                      Official Court Reporter
                      U.S. District Court
                      55 Pleasant Street
                      Concord, NH 03301
                      (603) 225-1454

1    absolutely no actual injury or evidence thereof.  It's
2    more akin to another case out of this district court,
3    Christian versus Barricade Books, where one book was
4    sent into the state to a bookstore and then wasn't sold
5    and was returned to the publisher.  There was no actual
6    injury in the state because no one bought the book and
7    no one read it.
8              Those are the facts we're presented with here.
9    There's one subscription with 40 possible users that
10   could have downloaded it and no one did, and so there's
11   no actual injury.
12             THE COURT:  Like a lot of people do, though,
13   you're, it's not that I disagree with what you're saying
14   so much but relatedness to me -- I view relatedness as a
15   precursor even to purposeful availment.
16             MS. McNAMARA:  I agree with you.
17             THE COURT:  Well, you're talking about
18   purposeful availment.
19             MS. McNAMARA:  Well, because it kind of leads
20   into relatedness.
21             THE COURT:  Well, leads in sort of factually?
22             MS. McNAMARA:  Yes.
23             THE COURT:  I guess it does to an extent.  But
24   I guess I need to hear, when you talk about a case like
25   Keeton, a case like Keeton, you know, it's focusing on

1  effects, injury, in the context of purposeful availment,
2  and it makes sense in the context of relatedness.  I
3  think I need to hear you focus a little bit more on
4  relatedness in order to -- because if there's
5  relatedness, to me, if you can knock out relatedness I
6  think you're a lot further along the road of knocking
7  the case out for lack of jurisdiction than you are, you
8  know, the purposeful availment in a very sort of
9  amorphous analysis.  And it's not that I really take
10 issue with your approach to it, but I think it puts the
11 cart before the horse.
12         Why don't you talk to me about relatedness.
13         MS. McNAMARA:  Yes.  Well, your Honor, I think
14 the relatedness that you have is the causation analysis
15 is really what it comes down to.  And what you have to
16 establish, the one fact that the record shows that there
17 has been any contact by a defendant here is the one
18 subscription to Dartmouth.  So in order to have a
19 causation analysis concerning the three articles that
20 are at issue here, one would want to be able to
21 establish or have reason to believe that readers who had
22 access to that subscription actually read the article.
23 So that the injury that the Keeton court recognized is
24 that there's not injury just to a plaintiff in the libel
25 suit, there is injury to readers if what they're reading

1   Hampshire.  It's conduct that's actionable that you sued
2   them for.  You can sue them for doing business in New
3   Hampshire or breaching a business arrangement in New
4   Hampshire or undertaking any sort of conduct in New
5   Hampshire.  It's conduct that I guess potentially could
6   have effects felt in New Hampshire or impact in New
7   Hampshire, but that's not the, that's not what the case
8   arises from.
9              MR. SUSMAN:  The case arises from -- the case
10  arises from -- and this again, it gets back to how
11  relatedness is connected to the purposeful availment.
12             THE COURT:  Sure.
13             MR. SUSMAN:  But the fact of the matter is The
14  Deal decided that it wanted to benefit financially by
15  entering into a contract with a resident in New
16  Hampshire.  They believed that that's in their financial
17  interest.  If they did not expect to ever be sued in New
18  Hampshire, it was completely within their control.
19             THE COURT:  That's purposeful availment.
20             MR. SUSMAN:  That is purposeful --
21             THE COURT:  That is not relatedness.
22             MR. SUSMAN:  You are correct.  So once they
23  entered into that contract, though, with Dartmouth
24  College and circulated to New Hampshire, had they not
25  entered into that contract, willfully entered into that

1  contract, the articles at issue never would have been
2  circulated in New Hampshire.  They did and they have.
3  And that's why it's related to the conduct in New
4  Hampshire.
5              And to focus on the harm caused in New
6  Hampshire, that conflates relatedness with the effects
7  test which is something the court in Swiss American Bank
8  warned against.
9              THE COURT:  Sure.  But I thought you were the
10 one doing that.
11             MR. SUSMAN:  I'm not the one doing that.
12             THE COURT:  From my perspective you're the one
13 conflating.  I mean, because nothing about the -- I'm
14 just trying to think of an analogy, probably should have
15 thought of this before we had oral argument, but I'm
16 trying to think of an analogy for what you're
17 suggesting, but I'm not going to try to slow you down on
18 this.
19             Tell me -- how is it they're conflating and
20 you're not?  Because my view is, if you want to talk
21 about, you know, an expectation about being hailed into
22 court because they made a contractual agreement in New
23 Hampshire that has nothing to do with this defamatory
24 conduct, that to me sounds like you're conflating
25 relatedness and purposeful availment.  Why did the

1  case it's said that even a single, and this comes from
2  Burger King, even a single substantial act directed
3  toward the forum can support specific jurisdiction.  And
4  that's why in other cases such as American Network, Inc.
5  v. Access America Connect there were six New York
6  subscribers, and PS Productions v. Maxell Corp. there
7  was two sales in Arkansas.
8         Over and over again the question is they keep
9  focusing on this number, but the number is not just a
10 single one.  The number should be looked at in terms of
11 the fact that this is an interactive website.  That,
12 again, this is based upon the Zippo scale, the nature
13 and the contact of it was a subscription with the state
14 of New Hampshire.  This is not your typical, as you
15 said, as the Court said, a magazine that arrived in a
16 brown paper bag.
17         And finally if I may look at the
18 reasonableness of the exercise of personal jurisdiction.
19 The burden on the defendant seems to be one of the main
20 things that the defendants focus on.  As we stated in
21 our papers, according to defendants we should have
22 either sued in California or New York.  If we were to
23 sue in New York, Bill Meagher would have to come to New
24 York.  If we sued in California, The Deal would have to
25 come to California.  Litigating the matter in New

```
 1  Mr. Meagher.
 2          THE COURT:  Well, what about this New York
 3  situation?  Tell me about this New York situation where
 4  on the eve of the due date to a motion to dismiss you
 5  folks nonsuited -- you dismissed your case.
 6          MR. SUSMAN:  That's correct, your Honor.
 7          THE COURT:  Were you lead counsel in that
 8  case?
 9          MR. SUSMAN:  I came in -- I was not when it
10  was originally filed.  I came in --
11          THE COURT:  You were when it was dismissed.
12          MR. SUSMAN:  I was, dismissed and refiled
13  here, yes, your Honor.
14          THE COURT:  That really strikes me as
15  gamesmanship.  I mean, why would you ever conduct
16  yourself that way?
17          MR. SUSMAN:  In what way?  I wanted to --
18          THE COURT:  You read their brief, right?
19          MR. SUSMAN:  I did indeed.
20          THE COURT:  Don't say you don't know what I'm
21  talking about.  You waited until the day before their
22  motion to dismiss was due.  So they put all the time and
23  resources into drafting it, you knew it was coming, and
24  then you dumped your case.  That strikes me that, you're
25  about to tell me why it's not, but that strikes me on
```

1   the printed page as you playing games and trying to
2   harass and being burdensome.  So explain to me why it
3   wasn't.
4              MR. SUSMAN:  Because, your Honor, we had given
5   them multiple months and months and months of extensions
6   to file their motion, and in fact we were on the verge
7   of giving them another one, and at that point we decided
8   it was better to just dismiss the case and refile it
9   here.
10             THE COURT:  Because?
11             MR. SUSMAN:  Based on the statute of
12  limitations.
13             THE COURT:  Okay.
14             MR. SUSMAN:  If the Court has any questions.
15             THE COURT:  Well, I'm actually somewhat
16  persuaded by your argument as to the decision by
17  Dartmouth to -- the decision by Dartmouth to do business
18  in New Hampshire.  I mean not by Dartmouth, I'm sorry,
19  by the defendants to do business in New Hampshire with
20  Dartmouth.  But to me if it gets you anywhere, it gets
21  you somewhere on purposeful availment, not so much on
22  relatedness.  I'm still struggling with the concept.  I
23  guess I need some kind of authority or precedent for the
24  proposition that those -- that that decision alone to
25  contract with a New Hampshire subscriber goes to

1  declaration is warranted, though, because a couple of
2  times I've asked questions about a declaration I've
3  already read and you were able to focus me on the answer
4  that was in the declaration, so I appreciate that.
5            All right, let me take a little break here.  I
6  want to just talk to my law clerk and maybe rejoin you
7  in five minutes -- do you have five minutes to wait?
8            MS. McNAMARA:  Absolutely, your Honor.
9            MR. SUSMAN:  Yes.
10           THE COURT:  Let's take a little recess.
11           (Recess taken.)
12           (Adjourned at 11:35 a.m.)
13
14
15                  C E R T I F I C A T E
16
17       I, Sandra L. Bailey, do hereby certify that
18  the foregoing transcript is a true and accurate
19  transcription of the within proceedings, to the best of
20  my knowledge, skill, ability and belief.
21
22
23  Submitted: 5/19/2017     /s/ Sandra L. Bailey
                             SANDRA L. BAILEY, LCR, CM, CRR
24
25